118. **Misleading "Graham" Claims:** Both the product name and the package of Honey Maid Grahams claims to be graham product. This is not true. Graham products, such as graham cookies, crackers, and pie crusts, are by definition made from graham flour. Graham flour, invented in the United States in 1824, is a healthier alternative for baking for use instead of more heavily refined white flour. Graham flour has several very substantial nutritional advantages over white flour. Graham flour utilizes the whole wheat grain, which means that the bran and germ are not removed from the wheat kernel as in white flour. This results in a lower percentage of nutritionally empty starch and a much higher amount of fiber and protein compared to white flour. Graham flour also differs from white flour in that it is coarser and less refined. These two differences mean baked goods with graham flour are substantially better for health than white flour products.

119. Specifically, the highly-refined white flour that is the major ingredient in Honey Maid Grahams has a very high glycemic index, meaning that almost immediately upon consumption it is digested into simple sugar and released into the blood stream. High levels of blood sugar are toxic to a number of organs, so the body then releases the hormone insulin as a response to reduce blood sugar to a sage level. When this process is repeated over time, cells that normally react to insulin and absorb excess blood sugar become sensitized and partially resistant to insulin. This partial insulin resistance is variously referred to as metabolic syndrome, insulin resistance syndrome, and pre-diabetes. Type 2 diabetes eventually results. Graham flour products, because they are less refined and contain fiber and protein, are more slowly digested and do not cause the sudden spike in blood glucose and insulin levels.

120. Besides their mild relative effects on blood sugar and metabolic health, graham flour based products are also healthier because of their higher fiber

content. Fiber is important to aid digestion and a lack of fiber in the diet is linked with cancer in the digestive tract.[47] Products with natural fiber are also subjectively more satisfying and "filling" and less likely to be consumed in excess.[48] A low fiber diet in children is linked to obesity, constipation,[49] and irritated mood.[50]

121.   Plaintiff and the public generally are aware that graham products are healthier than white flour products. Honey Maid Grahams, however, contain more than three times the amount of white flour as graham flour. It is therefore false to describe them a "Grahams" or "graham snacks." Graham products are made entirely from graham flour.

122.   **False and Misleading "Honey" Claims:** Honey Maid's product name, the prominent second use of the word "Honey" directly below it, and the prominent image of flowing honey, both individually and even more so collectively, convey the message that Honey Maid Graham Crackers are primarily sweetened and flavored with honey. This is false. Honey Maid Grahams in fact contains nearly no honey. Honey Maid in fact contains more PHVO more high fructose corn syrup and more PHVO than honey.

123.   Consumers value products sweetened with honey because it is a natural ingredient, unlike HFCS, and because it shown to have anti-bacterial, anti-viral, anti-oxidant, and anti-fungal properties. Honey possess six species of

---

[47] Mayo Clinic, "Colon Cancer: Risk Factors," Aug. 15, 2009, *available at:* http://www.mayoclinic.com/health/colon-cancer/DS00035/DSECTION=risk-factors.
[48] *Id.*, "Dietary Fiber: Essential for a healthy diet," Nov. 19, 2009, *available at:* http://www.mayoclinic.com/health/fiber/NU00033.
[49] *Id.*, "Constipation in Children: Causes," May 2, 2009, *available at:* http://www.mayoclinic.com/health/constipation-in-children/DS01138/DSECTION=causes.
[50] *Id.*, "Constipation in Children: Symptoms," May 2, 2009, *available at:* http://www.mayoclinic.com/health/constipation-in-children/DS01138/DSECTION=symptoms.

1  therapeutic lactobacilli and four species of bifodobacteria. Moreover, some
2  phytonutrients found in honey have been shown to possess cancer-preventing and
3  anti-tumor properties, including caffeic acid methyl caffeate, phenylethyl caffeate,
4  and phenylethyl dimethylcaffeate.

5      124.  Honey also promotes better blood sugar control. Honey is an ideal
6  fuel for the liver because it contains a nearly 1:1 ratio of fructose to glucose.
7  Fructose "unlocks" the enzyme from the liver cell's nucleus that is necessary for
8  the incorporation of glucose into glycogen. An adequate glycogen store in the liver
9  is essential to supply the brain with fuel. Experimental evidence indicates
10 consumption of honey may improve blood sugar control and insulin sensitivity
11 compared to other sweeteners, including the HFCS Kraft uses in Honey Maid
12 Graham Crackers.

13     125.  **False and Misleading "Sensible Solution" Claim:** Kraft labels
14 Honey Maid Grahams a "Sensible Solution." This statement, made beside a listing
15 of cholesterol and saturated fat content, is misleading because Honey Maid
16 Grahams contains PHVO, which damages heart health far more than dietary
17 cholesterol and saturated fat. The claim is likewise false because it is not
18 "sensible" for a reasonable consumer to purchase a cracker with ingredients that
19 will cause heart disease, cancer, and diabetes, and for reasons further described
20 above in the Ritz Cracker section.
21 ///

COMPLAINT AND DEMAND FOR JURY TRIAL

**Nabisco Ginger Snaps**



126.  **Misleading "Ginger" and "Molasses" Claims:** Ginger Snaps claim to be "Made with Real Ginger & Molasses." The product's name further implies that it is made with ginger. The implication is that Ginger Snaps are flavored and sweetened with natural substances, and are therefore healthy. This is not true. Ginger Snaps contain more added HFCS than molasses, and contain more PHVO than ginger.

127.  Ginger is effective in alleviating symptoms of gastrointestinal distress and possesses numerous therapeutic properties including antioxidant effects, the ability to inhibit the formation of inflammatory compounds, and direct anti-inflammatory effects. It may also inhibit the growth of human colorectal cancer cells, and induces cell death in ovarian cancer cells. Molasses contains more vitamins, minerals and trace elements (iron, potassium, calcium and magnesium)

COMPLAINT AND DEMAND FOR JURY TRIAL

than in other sweeteners, like the highly-refined HFCS in Kraft's Ginger Snaps.

128. By misleadingly labeling the Ginger Snaps as "Made with Real Ginger & Molasses," Kraft implies that the Ginger Snaps provide the benefits of ginger and molasses, rather than the detriments of highly-processed, nutritionally empty sweeteners like added sugar, and other toxic substances like PHVO/trans fat.

129. **False and Misleading "Sensible Solution" Claims:** This claim is false and misleading for all the reasons previously described in other products, which are hereby incorporated by reference.

## RELIANCE AND INJURY

130. When purchasing the Kraft PHVO Products, Plaintiff was seeking, for herself and her family, products of particular qualities, including products that were free from artificial *trans* fat, products that did not negatively affect blood cholesterol levels, and products made with natural, healthy ingredients.

131. Plaintiff read and relied on, for each purchase of the Kraft PHVO Products made during the Class Period, Kraft's misleading "Graham," "Wholesome," "support kids' growth and development," "Smart Choices," "Made With Real Vegetables" (and depictions of vegetables), "Sensible Solution," "Whole Wheat," "Sensible Snacking," "Honey," and "Made with Real Ginger & Molasses" health claims.

132. Plaintiff purchased the Kraft PHVO Products believing they had the qualities Plaintiffs sought based on their deceptive labeling, but the products were actually unsatisfactory to Plaintiff for the reasons described herein.

133. The Kraft PHVO Products cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements.

134. Plaintiff paid more for the Kraft PHVO products, and would have

been willing to pay less, if they had not been mislead by the false and misleading labeling complained of herein. Plaintiff would not have purchased the Kraft PHVO Products at the prices they did absent these advertisements.

135. For these reasons, the Kraft PHVO Products were worth less than what Plaintiff paid for them.

136. Plaintiff purchased Kraft's PHVO Products instead of competing products based on the false statements and misrepresentations described herein.

137. Instead of receiving products that have the advantages inherent in being free of artificial *trans* fat and comprised of natural, healthy ingredients, they received products that contained artificial *trans* fat and were comprised of highly-refined, highly-processed, and nutritionally empty ingredients.

138. Plaintiff lost money as a result of Kraft's deception in that Plaintiff did not receive what she had paid for.

139. Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amount she paid for the Kraft PHVO Products.

## DELAYED DISCOVERY

140. Plaintiff did not discover that Kraft's labeling of the Kraft PHVO Products was false, deceptive, or misleading until late April 2010.

141. While Plaintiff knew that consumption of artificial *trans* fat was generally worse that other types of dietary fat intake, she was unaware of the grave health consequences of consuming products like the Kraft PHVO Products before that time, or the connection between the consumption of such artificial *trans* fat and disease such as coronary heart disease, type 2 diabetes, cancer, and death. Plaintiff was also unaware that the consumption of artificial *trans* fat affects blood cholesterol levels far more than dietary cholesterol or saturated fat.

142. Plaintiff is not a nutritionist, food expert or food scientist; she is a lay consumer who did not possess the specialized knowledge Kraft had which

COMPLAINT AND DEMAND FOR JURY TRIAL

otherwise would have enabled her to associate partially hydrogenated oil with artificial *trans* fat, and artificial *trans* fat with disease.

143. Plaintiff, in the exercise of reasonable diligence, could not have discovered Kraft's deceptive practices earlier because, like nearly all consumers, she does not read or have access to scholarly publications such as The Journal of Nutrition,[51] The European Journal of Clinical Nutrition,[52] and The New England Journal of Medicine.[53]

144. Further, even today knowledge of the extensive use of artificial *trans* fats, including that they necessarily exist where partially hydrogenated oil is used as an ingredient in a food product, is generally unknown to the average consumer.

## CLASS ACTION ALLEGATIONS

145. Plaintiff brings this action on behalf of herself and the following Classes in accordance with Rule 23 of the Federal Rules of Civil Procedure:

146. The Classes are defined as:

Restitution and Damages Class:

All persons (excluding officers, directors, and employees of Kraft) who purchased, on or after January 1, 2000, one or more of the Kraft PHVO Products in the United States for their own use rather than resale or distribution.

---

[51] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction.* 134 J. of Nutrition 874, 874-79 (2004).

[52] A. Tavani et al. *Margarine intake and risk of nonfatal acute myocardial infarction in Italian women.* Eur. J. Clin. Nutr. 51: 30–32 (1997) (estimating a 50% greater risk of heart attack in women with high consumption of margarine, an association "independent of body mass index, history of hypertension and hyperlipidemia.")

[53] "10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat." 354 New Eng. J. Med. at 1611.

<u>Injunctive Relief Class:</u>

All persons (excluding officers, directors, and employees of Kraft) who commonly purchase or are in the market for one or more Kraft PHVO Products in the United States for their own use rather than resale or distribution.

147. Questions of law and fact common to Plaintiff and the Classes include:

    a. Whether Kraft contributed to, committed, and/or is responsible for the conduct alleged herein;

    b. Whether Kraft's conduct constitutes the violations of law alleged herein;

    c. Whether Kraft acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein; and

    d. Whether Class members are entitled to restitution; and

    e. Whether Class Members are entitled to injunctive relief.

148. By purchasing and/or using the Kraft PHVO Products, all Class members were subjected to the same wrongful conduct.

149. Absent these material deceptions, misstatements, and omissions, Plaintiff and other Class members would not have purchased the Kraft PHVO Products.

150. Plaintiff's claims are typical of the Classes' claims. Plaintiff will fairly and adequately protect the interests of the Classes, has no interests that are incompatible with the interests of the Classes, and has retained counsel competent and experienced in class litigation.

151. The Classes are sufficiently numerous, as they each include hundreds of thousands of individuals who purchased the Kraft PHVO Products throughout the United States.

152. Class representation is superior to other options for the resolution of
COMPLAINT AND DEMAND FOR JURY TRIAL

the controversy. The relief sought for each Class member is small. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

153. Kraft has acted on grounds applicable to the Classes, thereby making appropriate final injunctive relief or declaratory relief concerning the Classes as a whole.

154. Questions of law and fact common to the Classes predominate over any questions affecting only individual members.

## FIRST CAUSE OF ACTION
## Violations of the California Unfair Competition Law,
## Bus. & Prof. Code §§ 17200 *et seq.*
## (Unlawful)

155. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

156. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

157. The acts, omissions, misrepresentations, practices, and non-disclosures of Kraft as alleged herein constitute "unlawful" business acts and practices in that Kraft's conduct violates the False Advertising Law and the Consumer Legal Remedies Act.

158. Kraft's conduct is further "unlawful" because it violates the Federal Food, Drug, and Cosmetic Act ("FFDCA") at 1) 21 U.S.C. § 343(a), which deems food misbranded when the label contains a statement that is "false or misleading in any particular;" and 2) 21 C.F.R. § 101.13(i)(3), which bars nutrient content claims voluntarily placed on the front of a product label that are "false or misleading in any respect."

159. Kraft's conduct likewise violates The California Sherman Food,

Drug, and Cosmetic Law ("Sherman Law"), at 1) Health & Safety Code § 110660, which deems food products "misbranded" if their labeling is "false or misleading in any particular," <u>and</u> 2) Health & Safety Code § 110670, which bars nutrient content claims voluntarily placed on the front of a product label that fail to comply with the federal regulation for nutrient content claims (i.e., "may not be false or misleading in any respect").

160. All of the challenged labeling statements made by Kraft, by violating the FFDCA and the Sherman Law, further violate the "unlawful" prong of the UCL.

161. Kraft leveraged its deception to induce Plaintiff and members of the Classes to purchase products that were of lesser value and quality than advertised.

162. Plaintiff suffered injury in fact and lost money or property as a result of Kraft's deceptive advertising: she was denied the benefit of the bargain when they decided to purchase the Kraft PHVO Products over competitor products, which are less expensive and/or contain no artificial trans fat. Had Plaintiff been aware of Kraft's false and misleading advertising tactics, she would have paid less than what she did for the Kraft PHVO Products or not have purchased them at all.

163. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Kraft from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

164. Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Kraft PHVO Products, which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

## SECOND CAUSE OF ACTION

### Violations of the California Unfair Competition Law

### Bus. & Prof. Code §§ 17200 *et seq.*

### (Unfair and Fraudulent)

165. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

166. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

167. The acts, omissions, misrepresentations, practices, and non-disclosures of Kraft as alleged herein constitute "unfair" business acts and practices because Kraft's conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Kraft's conduct outweighs any conceivable benefit of such conduct.

168. The acts, omissions, misrepresentations, practices, and non-disclosures of Kraft as alleged herein constitute "fraudulent" business acts and practices because Kraft's conduct has a tendency to deceive both the Class members and the general public.

169. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Kraft from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

170. Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Kraft PHVO Products, which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

## THIRD CAUSE OF ACTION

### Violations of the California False Advertising Law,

### Bus. & Prof. Code § 17500 *et seq.*

171. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

172. In violation of Bus. & Prof. Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the products without the knowledge that the Kraft PHVO Products contained toxic artificial *trans* fat.

173. Kraft either knew or reasonably should have known that the labels on the Kraft PHVO Products were untrue and/or misleading.

174. As a result, Plaintiff, the Classes, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Kraft was unjustly enriched.

## FOURTH CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act, Civ. Code § 1750 *et seq.*

### (Injunctive Relief and Restitution)

175. Plaintiff realleges and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

176. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

177. Kraft's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

    a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

    b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

  c. § 1770(a)(9): advertising goods with intent not to sell them as advertised.

  d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

178. As a result, Plaintiff and the Classes have suffered irreparable harm and are entitled to injunctive relief and restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, and the general public, pray for judgment and relief against Defendants as follows:

A. Declaring this action to be a proper class action.

B. An order enjoining Kraft from:

  a. marketing the Kraft PHVO Products using the word "sensible" when they contain PHVO;

  b. marketing the Kraft PHVO Products using the word "wholesome" when they contain PHVO;

  c. use of any other misleading health claim on the products described herein.

C. An order compelling Kraft to conduct a corrective advertising campaign the public of its previous false and misleading statements and omissions.

D. An order requiring Kraft to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice.

E. An order compelling Kraft to destroy all misleading and deceptive advertising materials and products as provided by 15 U.S.C. § 1118.

F. An order requiring Kraft to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the CLRA, plus pre-and post-judgment interest thereon.

G. Actual and punitive damages under the CLRA.

H. Costs, expenses, and reasonable attorneys' fees.

I. Any other and further relief the Court deems necessary, just, or proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

DATED: September 30, 2010

Respectfully Submitted,

BECK & LEE BUSINESS TRIAL LAWYERS
JARED H. BECK
ELIZABETH LEE BECK
Courthouse Plaza Building
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone: 305 789 0072
Facsimile: 786 664 3334

Counsel for Plaintiff and the Proposed Classes

58
COMPLAINT AND DEMAND FOR JURY TRIAL